The POSTER EXCHANGE, INC.,
Plaintiff-Appellant,

v.

NATIONAL SCREEN SERVICE COR-
PORATION et al., Defendants,

Columbia Pictures Corp. et al.,
Defendants-Appellees.

No. 74–1512.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1975.

Rehearing and Rehearing En Banc
Denied Sept. 24, 1975.

Francis T. Anderson, New Orleans, La., Glenn B. Hester, Augusta, Ga., C. Ellis Henican, Jr., New Orleans, La., for plaintiff-appellant.

Warren O. Wheeler, Tench C. Coxe, Gambrell, Russell, Killorin, Wade & Forbe, Atlanta, Ga., Phillip A. Wittmann, New Orleans, La., for Columbia Pictures Corp. et al.

Walter Beck, New York City, Charles H. Kirbo, John Izard, Atlanta, Ga., for Nat. Screen Serv.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

This case evolves from the same industry and raises, among others, the same issues decided today in Exhibitors Poster Exchange, Inc. v. National Screen Services Corp., 5 Cir., 517 F.2d 110, No. 74–1459 and Poster Exchange, Inc. v. National Screen Services Corp., 5 Cir., 517 F.2d 129, No. 74–2172, also decided today. Plaintiff here, The Poster Exchange Inc., (Poster), an Atlanta-based poster renter, initiated this treble damage suit[1] on February 26, 1969, in the Northern District of Georgia against National Screen Service Corp. (National Screen) and six motion picture producers (Producers)[2] charging their continuation

---

1. Pursuant to 15 U.S.C. § 15, note 19 *infra.*

2. Columbia Pictures Corporation, Metro Goldwyn Mayer, Inc., Paramount Film Distrib-uting Corp., Twentieth. Century Fox Film Corp., United Artists Corp., and Warner Brothers Pictures Distributing Corporation. Loew's

of an unlawful antitrust conspiracy, attempted monopoly, and monopoly, in the motion picture accessory industry in derogation of Sherman Act §§ 1[3] and 2.[4] In December, 1973, the district court granted the Producers (but not National Screen) a summary judgment on grounds of collateral estoppel and limitations.[5] Poster appeals.

We affirm as to all Producers except Columbia on grounds of collateral estoppel; we reverse as to Columbia, and remand for further proceedings with respect to the claim against it.

## I

The industry here is the same as that described in Exhibitors Poster Exchange, Inc. v. National Screen Services Corp., *supra,* but ever since 1943 plaintiff Poster has encountered rougher treatment from National Screen than has its counterpart in New Orleans. After settlement of the first motion picture accessory suit, in Philadelphia in 1943, National Screen granted Exhibitors in New Orleans a sublicense to distribute posters manufactured by National Screen; but, despite repeated requests, plaintiff Poster in Atlanta was afforded no such license. After entering the Atlanta Exchange Market, National Screen did supply Poster with accessories to some extent, until 1961, but these provisions were not sufficient to meet Poster's needs in supplying all of its own customers, and the prices to Poster were substantially higher than those to other independent poster renters. Finally, on May 16, 1961, Poster was cut off entirely from National Screen's posters.

In response, Poster sued National Screen in the Northern District of Georgia in 1961, charging National Screen with violations of § 2 of the Sherman Act and praying for treble damages and injunctive relief. The district court denied National Screen's motion for a summary judgment in its favor, and awarded a preliminary injunction. Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga.1961, 198 F.Supp. 557. On appeal we affirmed, 5 Cir. 1962, 305 F.2d 647, holding in particular that the outcome of the Philadelphia-based litigation of Lawlor v. National Screen Service Corp., 3 Cir. 1959, 270 F.2d 146, cert. denied, 1960, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742, in Philadelphia was not conclusive in this case.

Poster subsequently filed an amended complaint adding all of the Producers presently charged, save Columbia, as parties defendant. As amended, the complaint recited that each of the Producers, *including* Columbia, had contracted with National Screen regarding the production and distribution of its accessories, and alleged that the arrangements "were entered into pursuant to and in furtherance of a conspiratorial plan or scheme deliberately concerned and launched by the parties thereto for the purpose of creating a national monopoly of distributing standard accessories." The Producers moved for summary judgment, which was granted by the district court in 1963. Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga.1963, 35 F.R.D. 558. In granting judgment, the district court found no genuine issue as to any material facts, and relying on the *Lawlor* case as *stare decisis,* concluded that upon the facts asserted by Poster, the Producers were entitled to judgment as a matter of law.

Incorporated and Universal Film Exchange, Inc. are no longer defendants herein.

3. 15 U.S.C. § 1:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . .

4. 15 U.S.C. § 2:
Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . .

5. National Screen was subsequently awarded summary judgment, the appeal from which we resolve today in No. 74-2172.

Poster appealed, and we affirmed per curiam *sub nom.* Poster Exchange, Inc. v. Paramount Film Distributing Corp., 5 Cir. 1965, 340 F.2d 320.[6]

Poster's action against National Screen still remained, and it ultimately won a judgment for damages suffered day to day for the four years prior to initiation of its suit. On National Screen's appeal we affirmed. Poster Exchange Inc. v. National Screen Service Corp., 5 Cir. 1970, 431 F.2d 334. A few days thereafter Poster initiated this suit against National Screen and all six Producers, complaining that National Screen had continued in its monopoly and attempted monopoly in violation of Sherman Act § 2 and that all the defendants had continued in a "combination and conspiracy . . . in unreasonable restraint of the interstate trade and commerce in the production and distribution of standard and specialty accessories in violation of Section 1 of the Sherman Act," through the date of suit, all to the considerable pecuniary damage of Poster.

The district court then granted summary judgment in favor of the Producers on grounds of limitations[7] and res judicata, and Poster appealed. We reversed. Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir.1972, 456 F.2d 662. First, we held that the res judicata reasoning relied upon by the trial court could not support its judgment. Second, we held that the intervening decision in Zenith Radio Corp. v. Hazeltine Research, Inc., 1971, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77, required a re-

versal of the district court's conclusion on the limitations issue. Anticipating the significance of collateral estoppel issues on remand, we additionally directed the district court to the principles enunciated in our 1970 opinion in the New Orleans litigation, Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1970, 421 F.2d 1313, cert. denied, 1971, 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439. We observed that:

> With respect to post-1961 actions which substantively are not foreclosed by the 1963 summary judgment, Poster may recover damages for all such acts which occurred within four years of the 1969 suit. As to such acts occurring prior to 1965, it can recover for such damages as could not reasonably have been proved prior to February 26, 1965. . . .

456 F.2d at 667. Moreover, in remanding the case we advised that:

> Good judicial husbandry calls for an effective pretrial management of this case which has now occupied the attention of not less than four trial judges, fifteen Circuit judges and Supreme Court justices twice. [T]he District Court should require by suitable means that Poster outline in detail what its claim is. The Court should determine as to the parties to the 1963 suit what, if any, issues were necessarily determined in the 1963 summary judgment . . .. Then, with precision, Poster should demonstrate what post-1961 acts substantively constitute antitrust violations on theories declared in [our 1970 opinion in the New

---

**6.** Poster contends here that the district court's 1963 summary judgment in favor of the Producers was based on some erroneous application of the *Lawlor* decision and Vogelstein v. National Screen Service Corp., E.D.Pa.1962, 204 F.Supp. 591, for collateral estoppel. We think this is plainly wrong. Aside from the fact that the district court nowhere referred to collateral estoppel in its opinion, and that the doctrine would obviously not properly have applied since plaintiff Poster was not a party to the Philadelphia litigation, our 1961 opinion affirming the denial of summary judgment in favor of National Screen had already indicated that the Philadelphia litigation's findings were

not conclusive in this Atlanta litigation between different parties and concerning a different time period. As we have previously noted, *see* Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1972, 456 F.2d 662, we think it clear that the district court relied on the *Lawlor* case and its offspring solely for their value as *stare decisis*.

**7.** 15 U.S.C. § 15b provides that:

   Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. . .

Orleans litigation]. With respect to such substantive acts occurring prior to February 26, 1965, Poster should show the relevant facts on which to fix the earliest reasonable time or times for which damages for such claim or claims could have been proved to fix the commencement of the limitations period under *Zenith.* Considering the persistent inability of Poster to appreciate the significance of res judicata—collateral estoppel or the difficulties from parrotting the prior complaints in amended ones covering different periods of time and, on the other hand, like persistence by National [Screen] in asserting contentions now so often rejected by us, it would surely be in order to appoint a special master (F.R.Civ.P. 53), with his allowance to be taxed as costs for an orderly determination of just what remains to be disposed of by summary judgment on the basis of the facts, not just pleadings, or by trial.

456 F.2d at 668.

Pursuant to our recommendation, on remand the district court did appoint a master to facilitate the progress of Poster's lawsuit. In a response to the master's order to outline in detail the precise nature of its claims and state "the specific acts (or nonacts) of the defendants to be relied upon as proof of [the alleged] violations," Poster recited the pre-1961 history of dealings between the Producers and National Screen in regard to the standard motion picture accessory market, and charged that all the defendant Producers have persisted through the four-year period preceding suit (February 26, 1965, to February 26, 1969) in their alleged exclusive dealing with National Screen. As in Exhibitors Poster Exchange, Inc. v. National Screen Services Corp., 5 Cir., 517 F.2d 110, No. 74–1459, the plaintiff asserted no basis for belief or inference that the alleged Producer-conspirators have engaged in conduct different in any way from that complained of in the prior suit against them. After an exhaustive review of the record in the prior case in which the Producers had won summary judgment, the master determined that in this action Poster complains only of the Producers' continuation in the conduct adjudged lawful in the district court's 1963 summary judgment in their favor. The master thus concluded that the Producers who were defendants in that prior action were entitled to a summary judgment on the basis of collateral estoppel. Moreover, the master observed that the allegations and attempted proof of conspiracy in Poster's 1961 suit applied equally to Columbia although Columbia was itself not a defendant, and recommended on that basis that Columbia was equally entitled to employ the 1963 judgment as an estoppel against Poster's present case against it for continuation in identical conduct. Finally, the master suggested that Poster's claims against all the Producers were barred by the four year statute of limitations, because the acts complained of transpired more than four years prior to the initiation of this suit in 1969, and because Poster had not shown its case to come within the *Zenith* exception, *see* Zenith Radio Corp. v. Hazeltine Research, Inc., 1971, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77, permitting the present recovery of previously unprovable damages from prior actionable antitrust acts. After reviewing the record, the master's report, and Poster's objections to that report, the district court entered an opinion adopting the recommendations of the master in full, and granted the Producers a summary judgment.

## II

We are faced with three issues on this appeal: first, the correctness of the district court's collateral estoppel holding in favor of the Producer defendants exonerated in Poster's 1961 suit; second, the entitlement of Columbia—which was not a defendant in that suit—to employ it as a collateral estoppel here; third, the applicability of the statute of limitations to bar Poster's claim against these defend-

ants' allegedly continuing antitrust conspiracy.[8]

■ We have no difficulty in affirming the district court's collateral estoppel judgment for the Producers who were charged as defendants in Poster's 1961 suit. This aspect of the case is identical to and controlled by our decision today in Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir., 517 F.2d 110, No. 74–1459. Poster has failed to demonstrate any change in the facts or circumstances differentiating the conspiracy alleged here from the conspiracy among the identical defendants alleged and unproved in its 1961 suit. The entire case alleged against the Producers is that they have continued to supply National Screen with accessories, pursuant to the pre-1961 allegedly exclusive dealing contracts unsuccessfully sued upon in Poster's last action. As in Exhibitors Poster Exchange, the sole argument raised by Poster against collateral estoppel is that it cannot be estopped by a summary judgment entered without specific findings. But as we have pointed out today in Exhibitors Poster Exchange, this argument has already been rejected in our 1970 opinion in the New Orleans litigation, Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1970, 421 F.2d 1313, 1319–20, and we are bound by that decision.

■ The summary judgment entered in the 1961 suit by necessity determined that upon the facts shown none of the Producer defendants had conspired unlawfully with Columbia. Columbia seeks here by that judgment to estop Poster from proceeding on its allegations that Columbia illegally conspired with the remaining Producers. We agree with the district court that collateral estoppel is correctly invoked here with respect to Columbia as well. Prior practice would not have recognized the estoppel here, for lack of mutuality,[9] but as we recognized in Rachal v. Hill, 5 Cir. 1970, 435 F.2d 59, 61–62:

> Although many states still honor the rule of mutuality of estoppel, the modern trend has been to discard the rule and preclude a party from relitigating an issue decided against him in a prior action, even if the party asserting the estoppel was a stranger to the prior action. . . . The federal rule comports with the modern trend and thus it is clear that the requirements of mutuality need not be met for collateral estoppel to be applied in an action presenting a federal question in the courts of the United States.

See also Zdanok v. Glidden Co., 2 Cir. 1964, 327 F.2d 944, 954–56, cert. denied 1964, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298; Bruszewski v. United States, 3 Cir. 1950, 181 F.2d 419, cert. denied, 1950, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632; Bernhard v. Bank of America, etc., 1942, 19 Cal.2d 807, 811–13, 122 P.2d 892, 894–95. This trend, which has been smiled upon by the Supreme Court, see Blonder-Tongue Laboratories, Inc., v. University of Illinois Foundation, 1971, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, has already been embraced by this Court. See Cheramie v. Tucker, 5 Cir.

---

8. While Poster's complaint in this case alleges antitrust violations involving the standard and specialty accessory industries, it is clear that the 1963 district court opinion relied upon here as an estoppel by the Producers disposed of the issue of conspiracy in the standard accessory business only. In its exceptions to the Master's recommendations and in its appeal here Poster has apparently abandoned any claim of a separate antitrust conspiracy and monopoly in the less important specialty trade, however, for we search in vain for any argument on the point. In any event, it is quite clear that, upon the principles recognized in part III of this opinion, Poster's complaint regarding the specialty accessory trade is barred by limitations. Poster having failed to come forward with any intimation of any act during the four years preceding this suit which foreclosed it from the specialty business.

9. That is, had Poster prevailed in its 1961 suit, upon the ground that some or all of the defendant producers had unlawfully conspired with Columbia, as Poster pleaded, Poster would not be entitled to rely upon that finding as an estoppel in a separate action against Columbia.

1974, 493 F.2d 586, 589 n. 10; Rachal v. Hill, *supra; see also* James Talcott, Inc. v. Allahabad Bank, Ltd., 5 Cir. 1971, 444 F.2d 451, 461; Monsanto Co. v. Dawson Chemical Co., 5 Cir. 1971, 443 F.2d 1035; Seguros Tepeyac, S.A., Compania Mexicana v. Jernigan, 5 Cir. 1969, 410 F.2d 718, 727, cert. denied, 1969, 396 U.S. 905, 90 S.Ct. 219, 24 L.Ed.2d 181. Where mutuality is lacking, a plaintiff may not be collaterally estopped if he did not enjoy "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time," *Blonder-Tongue, supra,* 402 U.S. at 333, 91 S.Ct. at 1445, 28 L.Ed.2d at 802, quoting Eisel v. Columbia Packing Co., D.Mass.1960, 181 F.Supp. 298, 301. But here, where plaintiff Poster had the initiative in a recognizably substantial litigation, and specifically chose to cite Columbia as one of the alleged conspirators, there is no suggestion of any failure of fairness in the original litigation, so as to render it unsupportive of an estoppel. *See generally, Blonder-Tongue, supra,* 402 U.S. at 332–34, 91 S.Ct. at 1444–1446, 28 L.Ed.2d at 402; Zdanok v. Glidden Co., *supra,* 327 F.2d at 955–56; James Talcott, Inc. v. Allahabad Bank, Ltd., *supra,* 444 F.2d at 462–63. Admitting "that in the modernized version of the law of collateral estoppel the ancient requirements of mutuality is no longer necessary," Poster's argument on this aspect of its appeal is only a recitation of its position that collateral estoppel must be based upon the result of a trial to the jury. A plaintiff's failure to muster sufficient proof to survive a summary judgment motion in the trial court or to sustain a jury verdict, however, is no demonstration that it was denied a fair opportunity to present its claim. *See* Cheramie v. Tucker, *supra.*

█ We believe that the district court did err, however, in holding that Poster's entire claim against Columbia was resolved by the collateral estoppel of the summary judgment for the Producers in Poster's 1961 suit. No judgment was ever entered in that litigation regarding the allegation that Columbia conspired with National Screen for the purpose of establishing or augmenting National Screen's monopoly. Thus, we cannot agree that Poster is collaterally estopped from maintaining its claim in this suit that Columbia's relations with National Screen amount to a vertical § 1 conspiracy.

### III

Poster's remaining claim against Columbia is that Columbia continued through the four year period preceding initiation of this suit in 1969 to conspire with National Screen to consolidate National Screen's monopoly position as the sole distributor of standard motion picture advertising accessories, in return for a share of the monopoly profits extracted from theater owners left dependent upon National Screen for their supplies. Accordingly, Poster seeks to recover triple the damages it has suffered during this four year period which result from the continuation of the alleged conspiracy and monopoly during this four year period.[10]

The district court believed that Poster's claim was barred by the four year statute of limitations, 15 U.S.C. § 15b,[11] however, because it considered Poster's claim as one arising essentially from National Screen's May 16, 1961, refusal to continue dealing with Poster. In adopting this approach the court adhered to the view expressed in its earlier summary judgment for all the Producers, Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga.1969, 306 F.Supp. 491, 492, "That the theory of 'continuing

---

10. Poster has alleged its continuing inability to secure standard accessories during the four year period, February 26, 1965 to 1969, through the continuation of exclusive dealing between the Producers and National Screen and through the continuation of National Screen's refusal to deal with Poster.

11. Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued.
. . . .

conspiracy' is not the law in the Fifth Circuit." But we reversed that summary judgment, 5 Cir. 1972, 456 F.2d 662, in light of Zenith Radio Corp. v. Hazeltine Research, Inc., 1971, 401 U.S. 321, 338–42, 91 S.Ct. 795, 806–808, 28 L.Ed.2d 77, 92–94. There we said:

> [T]he statute of limitations problem is present with respect to (i) pre-1961 conduct (or non-action) not foreclosed by collateral estoppel and (ii) post-1961 conduct occurring more than four years prior to [the filing of this suit].
>
> Here Zenith, supra, cuts a big figure. First, whatever expressions we have used from time to time, which might suggest that in antitrust situations there is no such thing as a continuing conspiracy, now must yield their sweeping force. . . .
>
> More importantly, what is emphasized, perhaps for the first time, is that for acts which have long since taken place—and which are in no sense repeated in conjunction with new acts (or non-acts)—the act in effect is "revived" as a basis for later damages under a certain circumstance. That circumstance is the inability of the injured victim to earlier prove with requisite certainty the existence and amount of damages. In that circumstance it is a holding that in antitrust cases subsequent damages have not yet "accrued." They do not "accrue" until they can be reasonably established. The moment the victim can prove such subsequent damages, the statute begins to run leaving four more years in which to assert them.
>
> . . .

456 F.2d at 666–67. Thus, we concluded that:

> With respect to post-1961 actions which substantively are not foreclosed by the 1963 summary judgment, Poster may recover damages for all such acts which occurred within four years of the initiation of [this suit]. As to such acts occurring prior to 1965, it

can recover for such damages as could not reasonably have been proved to February 26, 1965.

456 F.2d at 467.

■ On remand Poster declined to bring forward any evidence to show that it now suffers any damages from pre-1965 acts, which damages were unprovable before February 26, 1965. Thus, this aspect of Zenith is out of the case. As we have already stated, however, Poster has consistently maintained, in reliance on the "continuing conspiracy" aspect of Zenith, that it is entitled to recover for damages accruing during the four year period preceding this suit which have been caused by continuation of the alleged injurious acts of the alleged conspiracy and monopoly during that period. Poster is correct in this assertion. To repeat our 1972 opinion once again, we held that "with respect to post-1961 actions which substantively are not foreclosed by the 1963 summary judgment, Poster may recover damages for all such acts which occurred within four years of the [initiation of this] suit." As we have pointed out in part II, supra, Poster's claim against Columbia for conspiring with National Screen is not foreclosed by the 1963 summary judgment in favor of the other Producers, and thus it is clear from our previous opinion—which binds us at the least as the law of the case [12] and stare decisis—that this claim is not barred by limitations. The vigor with which counsel have debated the limitations issue, however, and the decisions below and in Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir., 517 F.2d 129, No. 74–2172, persuade us of the necessity to explain in some greater detail the precise rationale of our holding on this complex issue.

■ Since Crummer Co. v. Du Pont, 5 Cir. 1955, 223 F.2d 238, 248, we have recognized that for statute of limitations purposes a new cause of action against an antitrust conspiracy arises "from each act in violation of the antitrust laws for the damages flowing therefrom." The

12. See, e. g., Zdanok v. Glidden Co., 2 Cir. 1964, 327 F.2d 944, 952–53.

question presented here is whether the alleged continuing conspiracy and monopoly interfering with Poster's ability to supply itself with advertising accessories is to be treated for statute of limitations purposes as a single act and invasion of Poster's rights, occurring with the original refusal to deal on May 16, 1961, or with the earlier birth of the alleged conspiracy, or whether it may be viewed as a continuing series of acts upon which successive causes of actions may accrue. We are persuaded that the latter view is correct.

Columbia's argument to the contrary rests upon Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., N.D.Ala. 1960, 197 F.Supp. 333, 338, opinion on limitations adopted, 5 Cir. 1961, 295 F.2d 362 to establish that a continued refusal to deal such as Poster allegedly suffers from here constitutes a single invasion of the plaintiffs' right, and gives rise to a single substantive cause of action. The plaintiff wholesaler in *Norman Tobacco* complained of a "classic" conspiratorial refusal to deal by the defendant manufacturer Gillette; but the Court held that the plaintiff's suit was barred under the then applicable Alabama one year limitations statute, since the initial cut-off had occurred more than a year before the suit was filed, and since there was no reiteration of the refusal within a year. The court also reasoned, that even if the refusal had been reiterated during the latest year, "it probably would not constitute an actionable claim." 197 F.Supp. at 338 n. 17. This conclusion was apparently reached upon the reasoning that "recovery in this action may not be predicated upon the theory that the original refusal to deal is in the nature of a continuing tort or done pursuant to a continuing conspiracy." *Id.* 338.

A subsequent case, Braun v. Berenson, 5 Cir. 1970, 432 F.2d 538, 542, while distinguishing *Norman Tobacco*, recognized that the dictum there was in accord with the refusal to deal cases from other jurisdictions which held in similar circumstances that "the cause of action accrued when the initial refusal to deal was made, and was therefore barred by the running of the statute of limitations, because the damages suffered by the distributors were sustained at that time and in no way altered or affected by the subsequent refusals occurring within the limitations period." *Id.* 542–43. *See, e. g.,* Garelick v. Goerlich's, Inc., 6 Cir. 1963, 323 F.2d 854.

We are persuaded that after *Zenith* and Hanover Shoe, Inc. v. United Shoe Machinery Corp., 1968, 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 2236, 20 L.Ed.2d 1231, 1246, the *Norman Tobacco* dictum cannot be understood to control, at least in this monopoly context. As we particularly noted in our last opinion in this Atlanta litigation, "Here *Zenith, supra,* cuts a big figure. . . . [W]hatever expressions we have used from time to time, which might suggest that in antitrust situations there is no such thing as a continuing conspiracy, now must yield their sweeping force." 456 F.2d at 666.

Poster's complaint in this case is based on continuing antitrust behavior, not merely the continuing damage it feels from a single day's monopoly and refusal to deal in 1961. Indeed, our 1970 opinion affirming Poster's recovery in its 1969 trial against National Screen of damages whose computation was based on a day by day calculation of accruing injury according to Bigelow v. R. K. O. Radio Pictures, Inc., 1945, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, demonstrates the continuing nature of the injury Poster complains of, as well as its daily calculability.[13] *Cf.* Hanover Shoe, Inc. v. United Shoe Machinery Corp., 3 Cir. 1967, 377 F.2d 776, 794, aff'd in this regard, 392 U.S. at 502 n. 15, 88 S.Ct. at 2236, 20

---

**13.** As we noted in our last opinion in this case, reversing the Producers summary judgment on limitations in light of *Zenith,* Poster's 1969 recovery apparently anticipated the *Zenith* rationale. *See* Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1972, 456 F.2d 662, 668 n. 13.

L.Ed.2d at 1246, distinguishing *Norman Tobacco, supra.* Moreover, in cases where plaintiffs have suffered from a continued refusal to deal, they have been forbidden to prove damages inflicted by persistence of the refusal after the date of filing suit, precisely on the ground that a plaintiff is barred from recovering on injuries caused by wrongful *acts* subsequent to suit, and the

> cause of action is founded on an act of a continuing nature. The [initial] express refusal to deal constituted no more than a refusal to deal at that time.

Flintkote Co. v. Lysfjord, 9 Cir. 1957, 246 F.2d 368, 394–96, cert. denied, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46; Connecticut Importing Co. v. Frankfort Distilleries, 2 Cir. 1939, 101 F.2d 79; Frey & Son, Inc., v. Cudahy Packing Co., D.Md.1917, 243 F. 205.[14] *See also* Momand v. Universal Film Exchange, Inc., D.Mass.1942, 43 F.Supp. 996, 1006, aff'd, 1 Cir. 1948, 172 F.2d 37, 49, cited with approval in *Zenith,* 401 U.S. at 338, 91 S.Ct. at 806, 28 L.Ed.2d at 92.[15]

■ The Supreme Court's approval of this approach is indicated in *Hanover Shoe, supra.* There the antitrust defendant had exercised its monopoly power since 1912 to force the plaintiff to lease (and not buy) its machinery at monopoly rates but the plaintiff did not sue until 1955. The Court held that the antitrust action was not barred by the statute of limitations with respect to the period 1951–1955 because

> [w]e are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. *Cf.* Emich Motors Corp. v. General Motors Corp., 229 F.2d 714 (C.A. 7 1956), upon which [the defendant] relies. Rather, we are dealing with conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm on [the plaintiff].

392 U.S. at 502 n. 15, 88 S.Ct. at 2236, 20 L.Ed.2d at 1246. This language applies equally aptly to the matter at bar.[16]

These authorities [17] lay to rest the theory that under *Norman Tobacco*'s dictum, suit upon a continued antitrust violation must be prosecuted within four years from the first act of illegality (plus, of course, any period during which the limitations period was tolled). Where the violation is final at its impact, for example, where the plaintiff's business is immediately and permanently destroyed, or where an actionable wrong is by its nature permanent at initiation without further acts, then the acts causing damage

14. [W]here the injury sued for is caused by a mere repetition or continuation of acts of the same class as that for which the suit was brought, the plaintiff's recovery is limited to the damages resulting from such of those acts as were done before the bringing of the suit.

15. That is, had Poster initiated this action in 1961, as Columbia suggests it was obliged to, it could not then have recovered damages based upon the continuation of the defendant's allegedly illegal conduct during the 1965–1969 period, on the ground that the continuation of the conspiratorial acts during that period, and the consequent suffering of damages from contemporaneous market exclusion (as contrasted with damages suffered during the period as a consequence of the lingering effect of pre-1961 actions) would have been speculative only.

16. In its 1969 recovery against National Screen, affirmed in Poster Exchange Inc. v. National Screen Service Corp., 5 Cir. 1970, 431 F.2d 334, 340, Poster had damages from 1957–1961 against National Screen for monopolistic pricing *and* the making unavailable of sufficient poster supplies, conduct which had continued since the Forties. The limitations problem was not discussed in the appellate or trial court opinion there; and it would seem precisely within *Hanover Shoe.* We see no distinction in principle now that National Screen has allegedly found it feasible to expand its monopoly control by totally cutting Poster off from all sources of supply.

17. Consistent with this approach, we declined to follow *Norman Tobacco* and its cousins in Braun v. Berenson, 5 Cir. 1970, 432 F.2d 538. Distinguishing the *Norman Tobacco* dictum, we held that where a shopping center landlord, allegedly conspiring with a haberdasher tenant, refused successively to rent several vacant storefronts to the plaintiff, each alleged refusal constituted a separate violation, so that suit could be brought upon the last refusal alone, the only refusal within four years of the suit.

are unrepeated, and suit must be brought within the limitations period and upon the initial act.[18] But here, where the action complained of was the exclusion of Poster from any participation in the standard accessory industry, such action, while perhaps unequivocal, was not of necessity permanent, see Flintkote Co. v. Lysfjord supra, 246 F.2d at 395; see also Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 328 n. 13 and accompanying text, 75 S.Ct. 865, 868 n. 13, 99 L.Ed. 1122, 1127, "we are not dealing with an act which occurs within some specific and limited time span. . . . Rather, we are dealing with conduct which constituted a continuing violation." See also Baker v. F. & F. Investment, 7 Cir. 1970, 420 F.2d 1191, 1200; Highland Supply Corp. v. Reynolds Metals Co., 8 Cir. 1964, 327 F.2d 725, 732; Susser v. Carvel Corp., S.D.N.Y.1962, 206 F.Supp. 636, 651–52, aff'd, 2 Cir. 1964, 332 F.2d 505, cert. dismissed, 1965, 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284; Cardinal Films, Inc., v. Republic Pictures, Corp., S.D.N.Y.1957, 148 F.Supp. 156, 159–60. This reasoning is sealed by the unqualified embrace in Zenith of the recognition that each injurious act of a continuing conspiracy gives rise to an antitrust cause of action, and the Zenith opinion's conspicious selection of authorities eschewing the requirement of acts different in kind to set up a later accruing cause of action:

> In the context of a continuing conspiracy to violate the antitrust laws . . [it] has usually been understood . . that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act. See, e. g., Crummer Co. v. Du Pont, 223 F.2d 238, 247–48 (C.A. 5 1955); Delta Theaters, Inc. v. Para-

mount Pictures, Inc., 158 F.Supp. 644, 648 (E.D.La.1958); Momand v. Universal Film Exchange, Inc., 43 F.Supp. 996, 1006 (D.Mass.1942), aff'd, 172 F.2d [37], at 49 (C.A. 1 1948). . . . Thus, if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date.

401 U.S. at 338, 91 S.Ct. at 806, 28 L.Ed.2d at 92. Here, Poster complains that during the four-year period sued upon, it has been continually injured by Columbia's and National Screen's conspiratorial foreclosure of Poster from access to supplies. Under Zenith we are obliged to recognize Poster's continually accruing cause of action during this period.

Moreover, aside from the conclusive effect of these authorities, any other result here would, we think, improperly transform the limitations statute from one of repose to one of continued immunity. For according to Columbia's argument, a plaintiff who suffers continuing damage from the continued invasion of a monopoly and exclusion from the market is barred not only from proving violations and damages more than four years old, but is barred forever from complaining of the continuing excuse of the unlawful conduct. The function of the limitations statute is simply to pull the blanket of peace over acts and events which have themselves already slept for the statutory period, thus barring the proof of wrongs embedded in time-passed events. See Delta Theaters, Inc. v. Paramount Pictures, Inc., E.D.La.1958, 158 F.Supp. 644, 648. Employing the limitations statute additionally to immunize recent repetition or continuation of violations and damages occasioned thereby not only extends the statute beyond

---

**18.** Cf. Emich Motors Corp. v. General Motors Corp., 7 Cir. 1956, 229 F.2d 714, 719, 720 rev'd on other grounds, 1957, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534, involving a dealership cancellation.

its purpose, but also conflicts with the policies of vigorous enforcement of private rights through private actions. *See generally Zenith,* 401 U.S. at 340, 91 S.Ct. at 807, 28 L.Ed.2d at 93; Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 329, 75 S.Ct. 865, 869, 99 L.Ed. 1122, 1128; Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1970, 421 F.2d 1313, 1318.

■■ The authorities cited above establish that continuing antitrust conduct resulting in a continued invasion of a plaintiff's rights may give rise to continually accruing rights of action. It remains clear nonetheless that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action.

Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. *See, e. g.,* Suckow Borax Mines Consolidated, Inc., v. Borax Consolidated, Ltd., 185 F.2d 196, 208 (CA 9 1950); Bluefields S.S. Co. v. United Fruit Co., 243 F. 1, 20 (CA 3 1917) appeal dismissed, 248 U.S. 595, 39 S.Ct. 136, 63 L.Ed. 438 (1919); 2361 State Corp. v. Sealy, Inc., 263 F.Supp. 845, 850 (N.D.Ill.1967). This much is plain from the treble-damage statute itself. 15 U.S.C. § 15.[19]

*Zenith, supra,* 401 U.S. at 338, 91 S.Ct. at 806, 28 L.Ed.2d at 92. *See also* Crummer Co. v. Du Pont, 5 Cir. 1955, 223 F.2d 238, 247–48; Streiffer v. Seafarers Sea Chest Corp., E.D.La.1958, 162 F.Supp. 602. That is Poster here is obliged to demonstrate some act of the defendants during the limitations period foreclosing or interfering with its access to supplies. Although Poster avers that National Screen alone has distributed the Producers' posters, in accord with assertedly exclusive agreements entered into long before 1965, during the period sued upon, it has failed to demonstrate that it has been refused access to standard accessories by Columbia during that period. We are less certain of the proper disposition of the allegation that National Screen—with Columbia's alleged complicity [20]—has continued during the period in suit to refuse to deal with Poster. While National Screen explicitly denied that Poster made any demand upon it for access to standard accessories during 1965–1969,[21] our cautious reading of the district court's opinion suggests that, in reliance on the somewhat conclusory averment of Poster's president,[22] the court believed that there might be a triable issue as to whether National Screen had "continued to refuse" to deal in standard accessories with Poster. As the foregoing discussion makes clear, we think it critical that the court determine whether there was, during the period sued upon, a mere absence of dealing, or whether there was some specific act or word precluding Poster from obtaining supplies from National Screen. Since

**19.** 15 U.S.C. § 15 provides that:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

**20.** We cannot be certain on the present state of the record that the activities and relationship between Columbia and National Screen were identical in kind and quality with the relationships averred in Posters previous case to exist between the other Producers and National Screen. Thus, the present state of the record does not invite our consideration of a substantive summary judgment resolution of this issue based on the precise *stare decisis* value of our opinion in Poster Exchange, Inc. v. Paramount Film Distributing Corp., 5 Cir., 1965, 340 F.2d 320. *Cf.* also Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1972, 456 F.2d 662, 664 n. 7.

**21.** National Screen's Affidavit in Opposition to Plaintiff's Motion for Partial Summary Judgment Against National Screen with Respect to Issue of its Alleged Liability, Doc. 36.

**22.** Affidavit in Support of Motion for Summary Judgment, Doc. 14; Plaintiff's Memorandum in Response to Order of the Special Master dated October 24, 1972, Doc. 66.

the district court was of the opinion that a cause of action arose in neither case, we cannot be absolutely certain, as we think necessary in this summary judgment context,[23] whether the district court accepted plaintiff's averments as indicating that there had been a specific act or word of refusal during the limitations period. We therefore find it necessary to remand the case for a clarification on this narrow question. If, upon remand, Poster is unable to present a triable issue of fact as to the occurrence of any specific act or word denying to it of access to Columbia's posters for distribution during the statutory period, then it may recover no damages, and judgment should be entered against it. If Poster satisfies the burden, then the district court should hold such further proceedings as are required, not inconsistent with this opinion.

The aperture as to Columbia on remand is a narrow one, but in the judicial search for factual certitude, we must be convinced that Columbia was either antitrust pure or impure during the statutory period. The affidavits and the trial court's findings in this case lack that pellucidity which is necessary to assure us that the summary judgment was properly entered. Since we can be content with no less, we remand for the limited purposes herein set forth.

Affirmed as to all defendants save Columbia; vacated as to Columbia and remanded for further proceedings.

---

23. See, e. g., National Screen Service Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647.